1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10   BENNY WILLIAMS,                          | Civil No.          07-0959 BTM (AJB)

11                              Petitioner,

12                                            | **REPORT AND RECOMMENDATION**
                                              | **DENYING PETITION FOR WRIT OF**
13                        vs.                 | **HABEAS CORPUS**

14   J. WALKER, Warden, et al.,

15                              Respondents.

16

17   **I.      INTRODUCTION**

18        Benny Williams, a state prisoner proceeding *pro se* and *in forma pauperis*, has filed a First

19   Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his San Diego

20   County Superior Court convictions in case number SCD 124538 for 12 counts of robbery. (Amended

21   Petition at 40.)[1]  Williams claims: (1) his trial was unfair because evidence of the separate offenses

22   was cross-admissible; (2) he was not provided adequate notice of the factual basis for the state's

23   allegation that his 1978 conviction was a prior strike; (3) the sentencing court improperly used

24   dismissed gun allegations from his 1974 and 1978 convictions to treat the convictions as prior strikes;

25   (4) the sentencing court erroneously imposed sentences for three prior strikes, twice; (5) he received

26   ineffective assistance of appellate counsel; (6) there was insufficient evidence to find a 1996 foreign

27   _____

28        [1] Williams's  Amended Petition is not consecutively paginated so, for convenience, the Court
     will refer to the consecutive page numbers provided by the electronic case filing system.

                                              1

felony qualified as a prior strike; (7) there was insufficient evidence to find a prior conviction involved great bodily injury or use of a deadly weapon constituting a prior strike; and (8) his right to be free from double jeopardy was violated when his prior convictions were used to sentence him under California's Three Strikes Law.  (Amended Petition at 13-34.)

The Court has considered the Amended Petition (Am. Pet.), Respondent's Answer and Memorandum of Points and Authorities (Resp'ts. Mem.), Petitioner's Traverse and Memorandum of Points and Authorities (Traverse), and all the supporting documents submitted by the parties.  Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends that the Petition be **DENIED**.

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct.  28 U.S.C. § 2254(e)(1)(West 2007); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The facts as found by the state appellate court are as follows:

A. Nurseryland Robbery (Count 1)
*The Crime*: In April 1994 the Nurseryland Garden Center had closed for the evening.  After locking the gates and doors, Mr. Atrat (the assistant manager) and another employee (West) entered an office to count the money.  At some point, Atrat left the office but when he opened the locked door to go outside, a black man wearing a ski a mask and tan gloves pointed a chrome or stainless steel revolver at Atrat and told him to lie down.  He then told Atrat to get into the office and open the store's safe.  When they encountered West, the man ordered him to lie down, and West complied.  The man ordered Atrat to put the money but not the coins into a bag, and Atrat complied with the demand.  The man put Atrat and West in the storage room and handcuffed them together before fleeing.
*The Identification*: The robber was approximately 5 feet and 10 inches tall, but Atrat could not identify him as Williams.  However, a latent fingerprint lifted from the office doorknob at Nurseryland was a partial match for Williams's left middle finger.

B. R.E.I. Robbery (Counts 3, 7 and 10)
*The Crime*:  In May 1994 Ms. Hazelquist, the R.E.I. store manager, was checking the store's locks approximately 30 minutes after closing when a black man sprang from hiding, pointed a revolver at Hazelquist's head, placed her in a chokehold, and forced her to take him to the office safe.  The man was not wearing gloves or a mask.  As they walked to the office, they encountered other employees; the man herded the employees into the store's office.  After arriving at the

office, the man ordered everyone except Hazelquist to lie on the floor and put their heads down, and directed Hazelquist to open the safe. As Hazelquist was opening the safe, two cashiers entered the office carrying their cash drawers, and complied with the man's order to give him the cash from the drawers. Hazelquist also complied with the man's order to open the safe and place the cash, but not any rolled coins, into the bag. The man then herded the group of employees to a tile walkway in the sales area and ordered them to lie down, calling out "Mike, they're coming towards you. They're all yours," even though it did not appear he had an accomplice. The man asked how he could leave the store, and then fled.

*The Identification*: Several R.E.I. employees identified Williams as the robber from a photographic lineup, a live lineup, and at Williams's preliminary hearing. Hazelquist was unable to identify Williams at a photographic lineup but recognized Williams as the robber when she saw his picture in a newspaper article. She also identified him during a live lineup conducted two weeks after the newspaper article was published, and wrote on her card "No question in my mind. He's the one."

## C. Famous Footwear (Count 19)

*The Crime*: In March 1995 two employees (Ms. Howard and Ms. Heard) at a Famous Footwear store had closed the store for the evening. Howard was carrying the cash register drawers toward the office when an unmasked black man suddenly appeared from behind some shelves, grabbed Howard by her hair and pointed a gun at her head. Howard complied with the man's order to call Heard to come to her. The man escorted them to the safe, and ordered them to lie on the floor while he approached the safe. He then ordered them to go into a bathroom and close the door. They emerged about 10 minutes later. The money from the safe, with the exception of some coins, was gone.

*The Identification*: Howard and Heard gave police a description of the robber. Howard also assisted a police artist to create a composite drawing of the suspect. After viewing a videotape lineup and hearing Williams's voice, Howard had no doubt Williams was the robber.

## D. Home Base Robbery (Counts 25, 26, and 27)

*The Crime*: Around 6:00 a.m. on August 6, 1995, the general manager of a Home Base store (Mr. Reid) was in the store's staff training room with about 11 other employees prior to the store's opening when a black man, wearing a stocking mask and carrying a semi-automatic firearm, walked into the room and demanded the manager identify himself. Reid stated he was the manager, and the man grabbed Reid by a belt loop and pointed his gun at the other employees, stating, as if to an unseen accomplice, "Bud, you got my back? Watch my back." The robber ordered everyone else to lie on the floor and asked for the safe's location; Reid stated it was in the adjacent office. The man then ordered everyone into the hallway outside the room and had them face the wall, again yelling "Watch my back, Bud. You got my back." The man and Reid entered the vault room, then occupied by Mr. Kerr and Ms. Albuero, who were counting money for the upcoming business day. The man ordered Albuero to lie on the ground and ordered Kerr to empty the safe and give him the cash, but not any coins. The man then ordered Kerr to open another safe, but Kerr could not because it was time locked. The man then herded all of the

employees back to the training room and ordered everyone to lie down. The man then asked Reid how to leave the store and, after Reid complied with the man's order to disarm the alarm, ordered Reid to lie down. The man then fled with the money.

*The Identification*:  Several employees identified Williams as the robber at either a photographic or live lineup.  Reid identified Williams as the robber at a live lineup, but only after Albuero had shown Reid the newspaper article with Williams's picture.

### E. Home Depot Robbery (Counts 39 and 42)

*The Crime*:  In September 1995 Mr. Holt, the assistant manager of a Home Depot store, entered the store shortly before 6:00 a.m., and turned off its alarm system and turned on the lights in preparation for opening the store for the day.  As he walked to the rear of the store, he heard a thumping or thudding sound behind him and a black man appeared.  The man, wearing a stocking mask and gloves, put a silver semi-automatic gun to Holt's back or neck, and said, "Let's go get the money."  Holt told the man the vault had no money in it; the store had an inner vault that only opened by a time lock, and this inner vault had most of the store's money.  The man nevertheless directed him to the vault, saying "let's go get the money."  Holt had trouble with the alarm to the outer vault; it kept beeping when Holt was trying to deactivate it because, in his nervousness, he didn't realize he had already turned the alarm off when entering the store.  After about 20 minutes, the man rolled his stocking mask up to his forehead.

Holt eventually realized the outer vault alarm was off, and he opened the vault door, but the outer vault only had rolled coins, which the man did not want.  Holt stated there would be a problem if the other employees could not enter the store, so the man and Holt went to the front where Holt admitted the employees into the store while the man hid.  The man then emerged and ordered all of the employees into a break room to wait for the time lock on the inner vault to disengage.  At 6:00 a.m., Holt told the man it was time for the lock to disengage, and the man then herded everyone toward the vault room.  The man took Holt and another employee into the vault, and waited while Holt put the safe's cash into a bag.  The man did not want the coins.  Holt gave the bag to the man, who then fled.

*The Identification*:  Holt identified Williams as the robber from a photographic lineup and at the preliminary hearing.  He was positive about his identification, and stated his identification was not influenced by the newspaper article.  Employee Robertson also identified Williams as the robber at a photographic lineup and at the preliminary hearing.

### F. Office Depot Robbery (Count 44)

*The Crime*:  In September 1996 Mr. Lynn, a manager of an Office Depot store, saw a black man enter the store around 5:00 p.m. Lynn was concerned because of the time of day and the fact the man seemed uninterested in any products.  Lynn therefore told the other employees to give the man "world class" service, which signals to employees to pay so much attention to a customer that he or she will leave if the customer is not in fact interested in shopping.  Several employees approached the man, who stated he did not need help.  At some point, the man picked up a pack of yellow legal pads.  Lynn did not see the man again until shortly after he closed the store at 9:00 p.m. that night when the man reappeared, wearing a mask and latex gloves

4

and brandishing a silver snub-nosed revolver.  The man ordered everyone to lie on the floor, and then directed Lynn and another employee (Moore) to open the office containing the store safe.  Lynn opened the safe and placed its money in a box, but the man stated he did not want any coins.  The man instructed Moore to carry the box to the front of the store, and then told Moore to return to the group.  The man ordered the employees to lie down and crawl to the back of the store, then fled.

*The Identification*: At a live lineup Lynn stated it was "possible" Williams was the robber, but could not be positive.  However, police found Williams's fingerprints on a pack of yellow pads collected by police during their investigation of the Office Depot robbery.

### G. Beverages and More Robbery (Count 47)

*The Crime*:  In January 1997 Mr. Hillstrom, a Beverages and More store employee, closed the store around 9:00 p.m.  He had begun counting the store's money when he looked up and saw another employee, Mr. O'Connor, being held at gunpoint by a black man.  The man was wearing a stocking mask and a pair of black gloves and was armed with a chrome-plated revolver.  The man directed O'Connor to the manager's booth, where Hillstrom was counting money.  The man ordered O'Connor to lie down and ordered Hillstrom to open the safe and place the cash, but not any coins, into a bag.  The man then directed both employees to the back of the store and handcuffed them to a pole before fleeing.

*The Identification*: Hillstrom identified Williams as the robber at the live lineup.  O'Connor, who had not seen the newspaper article, identified Williams as the robber in a photographic lineup, at Williams's preliminary hearing, and at a later hearing.

### H. Uncharged Offense Evidence

In May 1996 officer Kirlin responded to a call at an Office Depot store in Beaverton, Oregon, where the manager reported he believed someone was hiding in a corner of the store.  Williams was found hiding behind some boxes.  When Williams was arrested, he had latex gloves and a coil of wire on his person.  A search of the area where Williams was found revealed a stocking mask and a simulated handgun.

(Lodgment No. 1 at 2-9.)

## III.     PROCEDURAL BACKGROUND

### A. Trial and Appeal

On July 15, 2003, a jury convicted Williams of 12 counts of robbery and found that he

07cv0959

personally used a firearm in each robbery.[2] (Lodgment No. 16, 11 RT 1611-17.)  In a bifurcated trial, the court found Williams had three prior serious felony convictions qualifying him for sentencing under California's Three Strikes Law.[3]  (*Id.* at 1649.)  The trial court sentenced Williams to state prison for a total indeterminate term of 140 years to life and a total determinate term of 115 years. (Lodgment No. 16, vol. 12 at 1677-80.)  Williams appealed to the California Court of Appeal, and on January 5, 2005, the court affirmed the judgment.  (Lodgment No. 1 at 34.)  On February 7, 2005, Williams filed a petition for review in the California Supreme Court.  (Lodgment No. 2 at 2.)  The petition was denied on April 20, 2005.  (*Id.* at 1.)

**B. First Round Habeas Petition in State Court-Ineffective Assistance of Appellate Counsel**

On September 19, 2005, Williams filed a petition for writ of habeas corpus, claiming ineffective assistance of appellate counsel, in the California Court of Appeal.  (Lodgment No. 3 at 2.) The appellate court denied Williams's petition on October 17, 2005, because "it was not filed in the superior court in the first instance."  (Lodgment No. 3 at 1.)  Williams then filed the same claim in a habeas petition on December 15, 2005, in the San Diego County Superior Court.  (Lodgment No. 4 at 2.)  The Superior Court denied the petition on the merits on February 3, 2006.  (*Id.* at 4-5.)  On February 27, 2006, Williams resubmitted his ineffective assistance of counsel claim to the California Court of Appeal by filing another habeas petition.  (Lodgment No. 5 at 4.)  This time the appellate court denied Williams's petition on the merits on May 24, 2006. (*Id.* at 1-3.)  On July 27, 2006, Williams presented the same claim by filing a petition for writ of habeas corpus in the California Supreme Court.  (Lodgment No. 6 at 2.)  The petition was denied on February 14, 2007, with a postcard citation to *In re Clark*, 5 Cal. 4th 750 (Cal. 1993).  (*Id.* at 1.)

**C. First Round Habeas Petition in Federal Court-Addition of Unexhausted Claim**

---

[2] In addition to the seven robberies detailed in the Factual Background section of this R&R, Petitioner was also charged with an eighth robbery of a Pic-N-Save store in the San Diego area. (Lodgment No. 15, 2 CT 401-02.)  The jury deadlocked on that count, and it was subsequently dismissed.  (Lodgment No. 16, 11 RT 1610, 1683.)

[3] The three priors were: (1) a 1974 conviction for burglary in violation of California Penal Code section 459; (2) a 1978 conviction for assault with a deadly weapon, in violation of California Penal Code section 245(a); and (3) a 1996 conviction for attempted robbery in the state of Oregon.

07cv0959

1   Williams filed a federal habeas petition in this Court on May 24, 2007, asserting the first five

2   claims presented in the current First Amended Petition.[4]  [Doc. No. 1.]  Respondent filed a Motion to

3   Dismiss [doc. no. 7], asserting that the Petition was time-barred under the Antiterrorism and Effective

4   Death Penalty Act's (AEDPA's) statute of limitations.  Respondent further claimed that it was a mixed

5   petition, containing both exhausted and unexhausted claims, and should therefore be dismissed.

6   Williams subsequently filed a Motion to Hold Federal Habeas Corpus Petition in Abeyance Pending

7   the Exhaustion of Potentially Meritorious and Dispositive Claims in [State] Court.  [Doc. No. 13.]

8   Meanwhile, Williams had two habeas petitions pending in the California Supreme Court, one of which

9   was filed on October 29, 2007 (*see* lodgment no. 13) raising the current claim four, and another which

10  was filed on December 5, 2007, raising his current claims six, seven and eight.  (Lodgment No. 11.)

11  **D. Federal Petition Stayed for Exhaustion of New Claims in State Court**

12  On January 25, 2008, this Court issued a Report and Recommendation finding that Williams's

13  Petition was not time-barred, but recommending that the motion for a stay and abeyance be denied and

14  the Petition be dismissed as mixed.  [Doc. no. 24]  District Judge Barry Ted Moskowitz issued an

15  Order on March 12, 2008, adopting in part and declining to adopt in part the Report and

16  Recommendation.  [Doc. no. 30]  The district judge agreed that the Petition was not time-barred by

17  the statute of limitations.  Further, the district court found the Petition should be held in abeyance

18  while Williams returned to state court to exhaust his unexhausted claims.  Accordingly, the case was

19  stayed pending a decision on Williams's state habeas petitions.

20  **E. Second Round State Court Habeas Petitions Denied, First Amended Federal Habeas**

21  **Petition Filed**

22  The California Supreme Court denied Williams's habeas petitions on April 23, 2008.  The first

23  petition (filed on October 29, 2007), addressing claim four, was denied with citations to *In re Robbins*,

24  18 Cal. 4th 770, 780 (1998), *In re Clark*, 5 Cal. 4th 750 (1993), and *In re Waltreus*, 62 Cal. 2d 218

25  _____

26  [4] (1) Lack of fair trial due to cross-admissibility of evidence; (2) insufficient notice of the factual basis of a 1978 assault for prior strike purposes; (3) improper use of dismissed gun allegations

27  for 1978 and 1974 convictions in treating them as prior strikes; (4) improper imposition of three five-year prior serious strikes, twice; and (5) ineffective assistance of appellate counsel.

28

(1965). (Lodgment No. 14.)  The second petition (filed on December 5, 2007), addressing claims six, seven and eight, was also denied with citations to *In re Robbins* and *In re Clark.*  (Lodgment No. 12.) Williams submitted the present  First Amended Petition [doc. no. 37], on May 27, 2008.  Respondent filed an Answer and Memorandum of Points and Authorities in support on August 29, 2008 [doc. no. 43].  Williams filed a Traverse and a Memorandum of Points and Authorities in support on December 5, 2008 [doc. no. 59].

**IV.     SCOPE OF REVIEW**

Title 28, United States Code, § 2254(d), sets forth the following scope of review for federal habeas corpus claims:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits* in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West 2006) (emphasis added).

To obtain federal habeas relief as to claims that have been adjudicated in the state courts on their merits, Williams must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the

07cv0959

dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

## V.      UNDER AEDPA'S STATUTE OF LIMITATIONS THE FIRST AMENDED PETITION IS TIMELY

Respondent argues Williams's First Amended Petition should be dismissed because it is time-barred under the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act (AEDPA).  (Resp't's Mem. at 13.)  This claim was previously raised in Respondent's Motion to Dismiss.  The Court found that the statute of limitations did not bar Williams's claims. Nevertheless, Respondent re-asserts the statute of limitations defense to preserve the issue for appeal. (*Id.* at 13 n. 6.)

AEDPA amended 28 U.S.C. § 2244  by adding subdivision (d)(1) which provides for a one-year limitation period for state prisoners to file habeas corpus petitions in federal court.  The section states, in pertinent part:

> (d)(1)  A 1-year period of limitation shall apply to a application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitations period shall run from the latest of --
>
> > (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to

cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Williams has not asserted that subsections (B)-(D) of § 2244(d)(1) apply to his case.  Accordingly, to calculate the time from which the statute of limitations began to run, the Court must first determine the date upon which Williams's judgment became final pursuant to section 2244(d)(1)(A).

Williams's direct appeal was denied by the California Court of Appeal on January 5, 2005. (Lodgment No. 1.)  He then filed a petition for review in the California Supreme Court, which was denied on April 20, 2005.  (Lodgment No. 3.)  Thus, Williams's conviction became final on July 19, 2005, 90 days after the state supreme court denied the petition for review, when Williams's time for filing a petition for certiorari in the United States Supreme Court expired.  *See Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001) (running of statute of limitations under section 2244 (d)(1)(A) is triggered by conclusion of all direct appeals and subsequent expiration of time for filing petition for writ of certiorari in the United States Supreme Court).  The statute of limitations began to run the following day, and absent statutory or equitable tolling, it would have expired on July 19, 2006.  *See Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001) (quoting Fed. R. Civ. P. 6(a)).

Next, the Court must determine whether there were any periods of statutory or equitable tolling that pushed the expiration of one year out beyond July 19, 2006.  Under AEDPA, the statute of limitations is tolled during periods when the petitioner has a properly-filed application for state collateral relief pending.  28 U.S.C. § 2244(d)(2) (West Supp. 2007).  Additionally, the interval between the disposition of one state petition and the filing of another is tolled under "interval tolling." *Carey v. Saffold*, 536 U.S. 214, 223 (2002).  "[T]he AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999)).

10

Williams filed his first state habeas petition in the California Court of Appeal on September 19, 2005. (Lodgment No. 3.) The petition was denied on October 17, 2005. (*Id*.) Williams then filed a habeas petition in the San Diego Superior Court on December 15, 2005, which was denied on February 3, 2006. (Lodgment No. 4.) Williams filed a second habeas petition in the California Court of Appeal on February 27, 2006, which was denied on May 24, 2006. (Lodgment No. 5.) Finally, Williams filed a petition for writ of habeas corpus in the California Supreme Court on July 27, 2006, and it was denied on February 14, 2007. (Lodgment No. 6.)

Respondent concedes that the statute of limitations was tolled from September 19, 2005, when Williams filed his first state habeas petition, through May 24, 2006, when the California Court of Appeal denied the second petition filed in that court. (Resp't's Mem. at 15.) Respondent asserts, however, that the statute was not tolled while Williams sought habeas relief in the California Supreme Court because his petition was not "properly filed." (*Id.*)

AEDPA's statute of limitations is tolled while a "properly filed" habeas petition is pending in state court. *See* 28 U.S.C. § 2244(d)(2); *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis omitted). Thus, a petition that is found by a state court to be untimely, based on the state's internal procedural rules, is not "properly filed" for AEDPA purposes. *Thorson*, 479 F.3d at 645 (citing *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005)). Respondent claims that Williams's habeas petition filed in the California Supreme Court on July 27, 2006, was untimely because the state court denied the petition with a citation to *In re Clark*, 5 Cal. 4th 750 (1993). (Resp't's Mem. at 15.) Respondent states, "The Court's *Clark* citation stands for the proposition that petitions for writ of habeas corpus which are untimely filed without good cause, and do not fall within an exception to the timeliness rule, will be procedurally barred." (*Id*.)

Contrary to Respondent's assertion, however, the California Supreme Court did not clearly deny Williams's habeas petition as untimely. The court cited *In re Clark*, but it did not provide a pinpoint citation to a particular page in the *Clark* decision. The *Clark* opinion states, "the general rule is that, absent justification for the failure to present all known claims in a single, timely petition for

writ of habeas corpus, successive and/or untimely petitions will be summarily denied." *In re Clark*, 5 Cal. 4th at 797.  But the *Clark* opinion does not stop there.  In the lengthy opinion, the court also discussed procedural bars against piecemeal presentation of claims, "abuse of the writ," and re-presentation of claims that were previously resolved on direct appeal.  *See id.* at 764-82; *see also Fields v. Calderon*, 125 F.3d 757, 763 (9th Cir. 1997) (noting that *Clark* "involved the application of the procedural rules regarding the timeliness of habeas petitions *and* the doctrine of separate petitions, barring a petition from raising claims in a second habeas petition that could have been, but were not, raised in the first habeas petition.") (emphasis added).  Thus, where the state court fails to give a pinpoint page citation to *Clark*, this Court cannot say the California Supreme Court "clearly ruled" that Williams's habeas petition was untimely.  *See Pace v. Diguglielmo*, 544 U.S. 408, 414 (2005) (quoting *Saffold*, 536 U.S. at 226).

When the state court denies a state habeas petition without any explanation or indication as to timeliness, the federal court must conduct its own inquiry to determine whether the state habeas petition was filed within a "reasonable time."  *Evans v. Chavis*, 546 U.S. 189, 198 (2006).  A California state habeas petition will be timely if it is filed within 30 to 60 days of the denial of a petition by a lower court, which is in line with the timeliness rules established by most states outside of California. *Evans,* 546 U.S. at 201.  An unjustified delay of six months, however, is not reasonable. *Id.*

Here, the short delays between the date Williams's conviction became final and each subsequent round of habeas review all fit within the 60-day time period considered timely by the Supreme Court.[5]  Furthermore, the Court finds Respondent's reliance on the postcard denial by the California Supreme Court with a general citation to *In re Clark* to be unpersuasive, since the petitioner in *Clark* waited over one year after his conviction became final before filing his first state habeas petition.

---

[5] The sole exception is the 64-day period that elapsed between the denial by the court of appeal on May 24, 2006, and Williams's filing in the California Supreme Court on July 27, 2006.  The Court finds the additional four days during this period not to be a significant enough delay to warrant a determination of untimeliness.  *See Saffold*, 536 U.S. at 226 (4 ½ month delay not unreasonable).

07cv0959

1    Because the California Supreme Court's February 14, 2007, summary opinion did not clearly

2    deny Williams's habeas petition as untimely, and because the delays between habeas filings in this

3    case fit within the guidelines established by the Supreme Court, the Court finds that Williams's habeas

4    petition filed in the California Supreme Court was "properly filed" for reasonable timeliness.  Thus,

5    the period in which the petition was pending tolled AEDPA's statute of limitations from the filing date

6    of September 19, 2005, through February 14, 2007, the date of the opinion.  The Court finds

7    Williams's federal petition, filed on May 24, 2007, was timely.[6]

8    **VI.    PROCEDURAL DEFAULT**

9    Having said Williams's Petition is timely and that the state court's *Clark* citation with regard

10   to the *timeliness issue* was unclear, there is certainly no doubt that *Clark* addresses types of state

11   procedural default in general.  *Fields v. Calderon*, 125 F.3d 757, 763-64 (9th Cir. 1997) (opinion in

12   *Clark* "intended to reestablish California's procedural rules governing state habeas petitions").  Thus,

13   a denial of a petition based on a general reference to *Clark,* without a pinpoint citation, is a denial

14   based on procedural default.

15   Consequently, Respondent claims the Court is procedurally barred from considering the merits

16   of Williams's claims four through eight because these claims were rejected by the California Supreme

17   Court based on independent and adequate state procedural rules, as is clear from their citations to not

18   only *Clark*, but other cases dealing with procedural rules.  (Resp't's Mem. at 16.)

19   During the stay of this petition, on April 23, 2008, the California Supreme Court denied

20   Williams's claims six, seven, and eight with postcard citations to *In re Robbins,* 18 Cal.4th 770, 780

21   (1998) (application of timeliness rule to bar review) and *In re Clark,* 5 Cal.4th 750 (1993).  In a

22   separate summary opinion, also issued on April 23, 2008, the California Supreme Court denied

23   Williams's claim four with postcard citations to *Robbins, Clark*, and *In re Waltreus*, 62 Cal.2d 218

24   (1965).  The addition of *Waltreus* may protect claim four from application of a procedural bar.  This

25   will be discussed below under section A(1).  Finally, the California Supreme Court denied Williams's

26

27   [6] The First Amended Petition, which was filed on June 4, 2008, relates back to the filing of the original federal petition because the amended pleading asserts substantially the same grounds for relief.  *See* Fed. R. Civ. P. 15(c); 28 U.S.C.A. § 2242 (West 2006).

28

1   fifth claim, on February 14, 2007,  with a postcard citation to *Clark*, with no pinpoint cite.  (*See*

2   Lodgment No. 10 at 1.)

3       Under the procedural default doctrine, a federal court "'will not review a question of federal

4   law decided by a state court if the decision of that court rests on a state law ground that is *independent*

5   of the federal question and *adequate* to support the judgment.'"  *Calderon v. U.S. Dist. Court (Bean)*,

6   96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991))

7   (emphasis added); *see also Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2003); *LaCrosse v. Kernan*, 244

8   F.3d 702, 704 (9th Cir. 2001); *Park v. California,* 202 F.3d 1146, 1151 (9th Cir. 2000).

9       **A.    The State Procedural Bars are Independent and Adequate**

10      The Ninth Circuit has held that because procedural default is an affirmative defense,

11  Respondent must first have "adequately pled the existence of an independent and adequate state

12  procedural ground . . .."  *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  In particular, the

13  *Bennett* court stated a federal court faced with a genuine issue as to whether a procedural bar is

14  adequate should require the state to plead and prove the default, whereupon the burden shifts to the

15  petitioner who must put forth sufficient evidence of inconsistency.  *Id.* at 586; *see also Dennis v.*

16  *Brown*, 361 F.Supp.2d 1124, 1127 (N.D.Cal. 2005) (although *Bennett* holding involved untimeliness

17  bar it may also be applied to claims allegedly barred as successive or pretermitted).  By identifying

18  each of Williams's claims that are allegedly procedurally barred in the Answer, and applying the

19  relevant legal principles, the Respondent has adequately pled and proved its affirmative defense of

20  state procedural default.  *See Dennis,* 361 F.Supp.2d at 1129 (respondent's identification of each of

21  petitioner's claims as procedurally defaulted in a motion to dismiss was sufficient to meet burden);

22   (Resp't's Mem. at 17.)

23      "For a state procedural rule to be 'independent,' the state law basis for the decision must not

24  be interwoven with federal law." *LaCrosse*, 244 F.3d at 704 (citing *Michigan v. Long*, 463 U.S. 1032,

25  1040-41 (1989)); *see also Park*, 202 F.3d at 1152.      In *Bennett* the court held that the procedural bar

26  of *Robbins* and *Clark* is not interwoven with federal law, and is thus an independent state procedural

27  ground.  *Bennett*, 322 F.3d at 582-83.  Additionally, a citation to *Clark* alone is a procedural ruling

28  that is independent of federal law.  *Id.* at 582.  Therefore, the independence prong is satisfied with

14

1   regard to *Robbins* and *Clark*.

2      A state procedural rule is "adequate" when the rule is "firmly established and regularly

3   followed" at the time of the purported default.  *Anderson v. Calderon*, 232 F.3d 1053, 1077 (9th Cir.

4   2000) (citations and quotations omitted) *overruled on other grounds by Bittaker v. Woodford*, 331 F.3d

5   715, 728 (9th Cir. 2003); *see also Bennett*, 332 F.3d at 583 (citing *Poland v. Stewart*, 169 F.3d 573,

6   577 (9th Cir. 1999)).  The state procedural rule must also be clear and consistently applied at the time

7   of petitioner's default.  *Wells v. Maas*, 28 F.3d 1005, 1010 (9th Cir. 1994) (citations omitted).

8      The *Bennett* court stated:

9           Before *Clark*, the California untimeliness standards were applied
            inconsistently to some fact patterns.  [citations omitted].  In *Clark*,
10          however, the California Supreme Court attempted to set out a definite
            rule for the prospective application.  [citations omitted]. Because the
11          California Supreme Court set out to create a rule that would be
            consistently applied, however, it does not follow that the rule in
12          historical fact has been so applied.  A few district courts have had the
            opportunity to analyze the consistence of application of the *Clark* rule,
13          reaching opposite results."

14   *Bennett*, 322 F.3d at 582.  A petitioner may rebut an assertion of adequacy by "asserting specific

15   factual allegations that demonstrate the inadequacy of the state procedure, including citation to

16   authority demonstrating inconsistent application of the rule."  *Id.* at 586.

17      Williams has failed to point to any factual allegations or authority to support his bald assertion

18   that California's procedural bar rules are inadequate.  The Court notes that Williams's burden is "quite

19   modest" and that he need "only *assert allegations*" but the allegations need to be more specific than

20   a general statement.  *Dennis*, 361 F.Supp.2d at 1130.  For example, the petitioner in *Dennis* was able

21   to direct the court's attention to approximately 200 capital cases like petitioner's in which the

22   California Supreme Court had inconsistently applied state procedural bars.  *Id.* at 1130.  In the absence

23   of such particular allegations by Williams in meeting his burden, the Court assumes California's

24   procedural bar rules are adequate as well as independent.

25      **A. (1)   Claim Four and *Waltreus's* Effect on Procedural Default**

26      The Court next returns to the issue of whether claim four is exempt from the procedural bar

27   based on the California Supreme Court's citation to *Waltreus* in denying Williams's petition.  In

28   *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000), the court held that where two procedural

1   rules are applied to deny a habeas petition, the claims are not subject to procedural default "if *either*

2   rule is not adequate and independent." (Emphasis added.)  Thus, all authority cited must meet the

3   independent and adequate test in order for procedural default to apply.  However, the Ninth Circuit

4   has clearly held that the *Waltreus* rule is not sufficient to bar federal habeas relief.  "[A]n *In re*

5   *Waltreus* citation is neither a ruling on the merits nor a denial on procedural grounds and, therefore,

6   has no bearing on a California prisoner's ability to raise a federal constitutional claim in federal

7   court." *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2003) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805

8   (1991)).  Reading this authority at face value would suggest that claim four is not subject to the

9   procedural bar because one of the citations in denial, *Waltreus*, is not independent or adequate.  But

10  if the Court looks to the reasoning behind the *Cambra* holding, one cannot say it logically applies to

11  this case.  In *Cambra* the court was dealing with more than one claim and could not ascertain from the

12  summary denial which claims fell under which authority.  The court stated it could reverse the

13  dismissal of the habeas petition if either rule cited in the dismissal was not adequate and independent

14  "because the California Supreme Court invoked both rules without specifying which rule applied to

15  which [] two claims." *Cambra,* 208 F.3d at 834.  Here, the denied petition raised only one claim,

16  leaving no doubt that *Clark* and *Robbins* were applied to that claim.  Thus, it would be nonsensical

17  to say the denial was not based on adequate and independent procedural bars after having already held

18  that *Clark* and *Robbins* do meet that standard.  In other words, the addition of the *Waltreus* citation

19  should not defeat an otherwise entirely appropriate application of the procedural default doctrine by

20  this court.

21          In any event, as discussed under section C. below, the Court would not be able to address

22  Williams's claim four even if it were not procedurally barred because it involves an application of

23  state sentencing procedures by the state court.  In conclusion, the Court finds the state's procedural

24  bars as applied by the California Supreme Court in denying Williams's habeas petitions to be

25  independent of federal law and adequate.  Petitioner's claims four through eight are procedurally

26  defaulted.

27          Nevertheless, a federal habeas court may still review a petitioner's defaulted claims if the

28  petitioner "can demonstrate *cause* for the default and *prejudice* as a result of the alleged violation of

federal law, *or* demonstrate that failure to consider the claims will result in a *fundamental miscarriage of justice*." *Coleman*, 501 U.S. at 750; *see also High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) (citing *Coleman*, 501 U.S. at 750); *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 1992) (emphasis added).

///

## B.      Cause and Prejudice Exception

For the Court to review the merits of Williams's defaulted claims, he must demonstrate cause and prejudice as a result of the alleged violation of federal law:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate the failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Park*, 202 F.3d at 1150.

Cause for procedural default requires an objective factor *external to the defense* that impeded the Petitioner's efforts to comply with the procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (discussing cause under abuse of writ doctrine). Acceptable objective factors include interference by officials that makes the assertion of the claim impracticable, a showing that the factual or legal basis for the claim was not reasonably available, or constitutionally ineffective assistance of counsel under the Sixth Amendment. *McCleskey,* 499 U.S. at 493-94; *see Harmon v. Ryan*, 959 F.2d 1457, 1457 (9th Cir. 1992) (petitioner showed cause for procedural default because he relied on a later-invalidated state law).

Williams's claims four, six, seven, and eight do not  allege objectively external factors impeded his efforts to comply with the procedural rule. Under those claims, Williams asserts arguments that had always been available to him for purposes of challenging his sentences. In any event, these claims lack merit, as explained below under the miscarriage of justice analysis, and failing to address them did not prejudice Williams.

The only possible claim that Williams can raise under the cause requirement is ineffective assistance of appellate counsel under claim five. Williams claims appellate counsel was ineffective for several reasons. To prove his claim, Williams must show that his attorney's representation fell

17

below an objective standard of reasonableness. *Strickland v. Washington,* 446 U.S. 668, 688 (1984). He must also prove he was prejudiced by demonstrating a reasonable probability that but for his counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The standard for assessing the performance of trial and appellate counsel is the same. *Morrison v. Estelle*, 981 F. 2d 425, 427 (9th Cir. 1992). Thus, Williams must show that but for appellate counsel's errors, the result of the appeal would have been different. *Id.*

First, Williams argues that appellate counsel used incorrect legal authority in arguing the trial court erroneously allowed evidence of each robbery to be cross-admissible for proof of the other robberies. (Am. Pet. at 13-14; Traverse at 22-27.) Williams states counsel relied on law pertaining to joinder and severance, whereas his case "hinged solely on the issue of cross-admissibility and whether the trial court abused its discretion under California's evidence code §§ 352 and 1101(b)."[7] (Traverse at 36.) The appellate brief reflects that although appellate counsel did cite case law pertaining to severance of counts and joinder of offenses, counsel did so because the prejudice issues and the abuse of discretion standard applied to these areas were "analogous" to Williams's claims regarding cross-admissibility. (Lodgment 7 at 15-16.) However, contrary to Williams's assertion, the appellate brief reflects that counsel also argued the claims based upon sections 352 and 110(b) of the Evidence Code. (*Id*. at 25-32.) Moreover, the appellate court's reasoning in rejecting Williams's claim rested on an application of sections 352 and 110(b). Therefore, counsel's performance was not deficient and did not prejudice Williams.

Williams's remaining ineffective assistance of counsel claims center around what is commonly referred to as the "Three Strikes Law."[8] Williams's second ineffectiveness of counsel claim is that

---

[7]California Evidence Code section 1101(b) states "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident...) other than his or her disposition to commit such an act." Under section 352, a trial court must consider whether admission of evidence is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[8]  The Three Strikes law is codified at California Penal Code sections 667(b)-(i). These sections were enacted in 1994 and significantly increased punishment for defendants who had suffered prior "violent" or "serious" felonies. Penal Code section 667.5(c) lists offenses that are to be considered "violent felonies" and section 1192.7(c) lists offenses that are to be considered "serious felonies." In March 2000, additional crimes were added to the lists of violent and serious crimes. These new additions were to be applied in prosecutions for offenses committed on or after March 8, 2000. The Three Strikes Law contains two sentencing schemes. If a defendant suffers two or more

appellate counsel failed to argue there were insufficient facts to support a finding that he used a deadly weapon in the commission of his 1978 assault, making the assault a prior a serious felony. (Am. Pet. at 27-28; Traverse at 37.) Contrary to Williams's claim, the appellate court stated that Williams had "implicitly argued there was insufficient evidence supporting the finding his 1978 conviction was for a serious felony because his guilty plea to count three contained no admission that he used a deadly weapon when he assaulted Ms. Garner." (Lodgment No. 1 at 22.) The appellate court then held against Williams on this issue because the abstract of judgment stating "ASSAULT W/DEADLY WEAPON," the trial court's consideration of the preliminary hearing testimony and Williams's admissions contained in the probation officer's report provided sufficient evidence for finding Williams used a deadly weapon during the commission of the 1978 conviction. In reaching this conclusion, the appellate court held that since passage of Proposition 21 in March 2000, "assault with a deadly weapon" had been added to the list of serious felonies under Penal Code section 1192.7 for purposes of triggering the Three Strikes Law.

Based on a review of the Three Strikes Law the Court notes that the appellate court should not have relied on the 2000 version of section 1192.7. Nevertheless, the appellate court's ultimate conclusion was sound. In a prosecution for an offense committed between the effective date of the Three Strikes Law (March 12, 1994) and its March 8, 2000 amendments, as were Williams's offenses, a prior conviction can be used as a strike only if it was on the serious felony list on June 30th 1993. *See People v. James*, 91 Cal.App.4th 1147, 1149-1150 (2001) (prior strike could be one of the serious felonies added to section 1192.7(c) in the 2000 amendments if current offense was committed on or after amendments became effective). Although "assault with a deadly weapon" was not on the serious felony list prior to the 2000 amendments, it would still have been eligible for consideration as a

---

prior strikes (violent/serious felonies), he must serve a term of life imprisonment. If a defendant has suffered a single prior strike, his sentence is doubled. "Due process requires the prosecution to shoulder the burden of proving each element of a sentence enhancement beyond a reasonable doubt." *People v. Tenner*, 6 Cal.4th 559, 566 (1993). If the fact of a prior conviction is not a per se serious felony (such as murder), proof of the defendant's *conduct* during the commission of the offense is necessary to prove the prior is a serious felony. If a prior conviction is from a foreign jurisdiction, the prosecution must show the prior conduct meets all the elements of a California conviction for a serious or violent felony. In proving prior felony conduct the prosecution may not go outside the record to re-litigate the circumstances of an old crime but must limit evidence to the record of the prior criminal proceeding. *People v. Woodell*, 17 Cal.4th 448, 450 (1998). Such record of conviction may contain charging documents, abstract of judgment, clerk's minutes, change of plea form, transcript of entry of plea, and the preliminary hearing transcript if the conviction resulted from a plea. Crim. Law Pro. and Practice, § 37.33B (3), page 1127 (2008).

1    serious felony under section 1192.7(c)(23), listing "any felony in which the defendant personally used

2    a dangerous or deadly weapon" as serious felony.  Even though Williams's guilty plea to assault in

3    1978 did not reflect an admission to use of a deadly weapon, the abstract of judgment states he was

4    convicted of "assault with a deadly weapon" pursuant to Penal Code section 245(a), which was a

5    felony.  (Lodgment 15, CT vol. 4 at 666.)  A conviction under section 245(a) is not necessarily a

6    conviction for a serious felony under the pre-2000 section 1192.7(c)(23) unless the prosecution plead

7    and proved personal use of a deadly weapon in the prior assault at Williams's sentencing for the

8    current offenses.  *People v. Davis*, 42 Cal.App.4th 806, 814 (1996).  The prosecution met this burden

9    of proof at sentencing by submitting exhibits consisting of the abstract of judgment, preliminary

10   hearing testimony of the assault victim, and Williams's admissions in the probation officer's report.

11   The appellate court stated, "[t]hose exhibits confirmed Williams did use a deadly weapon in

12   connection with the assault [] that formed the basis for Williams's 1978 conviction for violating

13   section 245, subdivision (a)."  (Lodgment 1 at 22.)

14        Thus, Williams's appellate counsel did implicitly raise this claim and the appellate court

15   properly ruled on it.

16        Williams next argues his appellate counsel failed to raise the argument that the prosecution did

17   not meet its burden of proving his 1996 Oregon conviction for attempted robbery contained the same

18   legal elements as a robbery in California to qualify as a serious felony for three strikes purposes.  (Am.

19   Pet. at 27-28; Traverse at 37-38.)  Appellate counsel did not raise this issue.  However, had counsel

20   made this argument, the appellate court would likely have rejected it under California law.

21        "To qualify as a serious felony, a conviction from another jurisdiction must involve *conduct*

22   that would qualify as a serious felony in California."  *People v. McGee,* 38 Cal.4th 682, 691 (2006);

23   quoting *People v. Avery*, 27 Cal.4th 49, 53 (2002) (emphasis added); *see also* §§ 667(d)(2)[9] and

24   1170.12 (b)(2).[10]   Sections 1192.7(c)(19) and (39) list attempted robbery as a "serious felony."

25   _____

26        [9] "[A] prior conviction of a felony shall be defined as:...(2) A conviction in another jurisdiction
     for an offense that, if committed in California, is punishable by imprisonment in the state prison.  A

27   prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense
     that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5

28   or subdivision (c) of Section 1192.7)."

        [10] Same language as in footnote 8 above.

1  Therefore, Williams's Oregon conviction for attempted robbery is eligible for consideration as a prior

2  strike and we must look at whether his conduct amounted to attempted robbery under California law.

3      The appellate court found the Oregon attempted robbery of an Office Depot was carried out

4  in the following way:

> 5  Williams was found hiding behind some boxes in a big "big-box" type retail
> store, and was in possession of latex gloves (similar to the type worn in many
> 6  of the other robberies) and a segment of wire and the coil of wire from which
> it had been cut, which could have been used as a substitute for the handcuffs
> 7  he employed in other robberies in 1994, 1995 and 1997.  Additionally, there
> was evidence Williams had also been carrying a stocking mask (similar to the
> 8  type of mask he employed in the later robberies) and a handgun....[T]his
> robbery bore all the "pre-robbery" marks common to the other charged
> 9  offenses, and the only reason the additional markers (e.g. how he controlled the
> employees; targeting the safe; taking only cash and not coins) were absent was
> 10  because he was apprehended before he could execute his crime.

11
12  (Lodgment 1 at 16.)  Under California Penal Code section 211, robbery is "the felonious taking of

13  personal property in the possession of another, from his person or immediate presence, and against

14  his will, accomplished by means of force or fear."  To establish attempt "'it must appear that the

15  defendant had a specific intent to commit a crime and did a direct, unequivocal act toward that end;

16  preparation alone is not enough, and some appreciable fragment of the crime must have been

17  accomplished.'"  *People v. Carrasco*, 163 Cal.App.4th 978, 983 (2008) quoting *People v. Archibald*,

18  164 Cal.App.2d 629, 633 (1958).  The trial court found beyond a reasonable doubt that the state had

19  proved the prior strike.  (Lodgment 15, CT vol. 5 at 1001.)  Further, the record of conviction reflects

20  that Williams pled no contest to the attempted robbery charge in Oregon.  (Lodgment 15, CT vol. 4

21  at 793-806.)  At Williams's plea hearing the state presented evidence that Williams and his co-

22  defendants planned to rob an Office Depot by going into the store and hiding until it was closed, at

23  which time they would take things from the store.  *Id.*  Williams armed himself with a toy gun,

24  surgical gloves, and some wire.  *Id.*  Williams hid behind some boxes where he was later discovered

25  by the police who were called by concerned employees.  *Id.*  The Oregon court found that "[t]hose

26  facts, if presented to a jury, would be sufficient to convict the defendant of attempted robbery . . . ."

27  *Id.*

28      Considering the above record, it is clear that Williams intended to take items from the Office

Depot by means of force and unequivocally acted toward that end by arming himself with a gun,

gloves and wire and hiding behind boxes until closing time.  Thus, Williams's prior conduct amounted to attempted robbery and a prior strike under California law.  Any argument to the contrary by appellate counsel would have failed.  Williams did not suffer prejudice from counsel's failure to argue this point.  The Court interprets Williams's third argument to be that his 1974 conviction for burglary did not amount to burglary in the first degree because the offense did not occur at night-time and was not upon an "inhabited dwelling."  (Am. Pet. at 27-28; Traverse at 38-39.)  As such, Williams argues this prior conviction did not qualify as a serious felony under California law for purposes of the Three Strikes Law.   He claims his appellate counsel was ineffective for failing to raise this argument.

Currently, section 1192.7(c)(18) states that "any burglary of the first degree" is a serious felony.  As outlined above, in a prosecution for an offense committed between the effective date of the Three Strikes Law (March 12, 1994) and its March 8, 2000 amendments, as were Williams's offenses, a prior conviction can be used as a strike only if it was on the serious felony list on June 30th 1993.  *People v. James*, 91 Cal.App.4th 1147, 1150-51 (2001).  In 1993, section 1192.7(c)(18)'s language was different: "burglary of an inhabited dwelling house, or trailer coach..., or inhabited portion of any other building" was a serious felony.  *People v. Nava*, 47 Cal.App.4th 1732, 1735 n.4 (1996).  The 1993 list also contained "[a]ny felony in which the defendant personally used a dangerous or deadly weapon" under section 1192.7(c)(23).  In 1974, Williams pled guilty to first degree burglary of a jewelry store pursuant to California Penal Code section 459 which defined burglary as an act involving:

> Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel...with intent to commit grand or petit larceny or any felony....

Cal. Pen. Code § 459.  A prior amendment had deleted an old requirement that entry be made in the night-time.  *Id.*

The record reflects that Williams entered a jewelry store and attempted to steal a diamond ring while using a weapon.  He therefore committed burglary as defined in section 459.  As for satisfying the definition of serious felony under sections 1192.7(c)(18) and (23),  Williams's conduct did not have to be in the night-time, or in an inhabited dwelling, or necessarily designated as first degree.

1    Because Williams entered "an inhabited portion of any other building" (store), with the intent to

2    commit larceny (unlawful taking of property of another), by use of a gun, he committed a felony and

3    "personally used a dangerous or deadly weapon."   Therefore, Williams's 1974 offense clearly

4    qualified as a serious felony under section 1192.7(c) for purposes of the Three Strikes Law.  Counsel

5    was not ineffective for failing to raise this meritless claim.

6          Under his fourth and last ineffectiveness claim, Williams states his appellate counsel should

7    have argued that because the firearms-use allegations  were dismissed as part of his agreements to

8    plead guilty to his 1974 and 1978 convictions, resurrecting them to prove these convictions were prior

9    serious felonies under the Three Strikes Law violated his constitutional right against double jeopardy.

10   (Am. Pet. at 27-18; Traverse at 37-40.)

11         "[T]he constitutional guarantee against double jeopardy 'is inapplicable where evidence of

12   prior criminal activity is introduced in a subsequent trial as an aggravating factor for consideration by

13   a penalty phase jury." *People v. Medina*, 11 Cal.4th 694, 765 (1995), quoting *People v. Garceau*, 6

14   Cal.4th 140, 199-200 (1993).  Even if there had been a finding, in a previous guilty plea, that the

15   defendant had not personally used a firearm, double jeopardy would not bar proof, for purposes of

16   sentencing in the current proceeding, that the defendant did personally use a firearm in the commission

17   of the prior offense. *See People v. Blackburn*, 72 Cal.App.4th 1520, 1528 (1999).  This is because

18   "evidence of past criminal conduct at a sentencing hearing does not place the defendant in jeopardy

19   with respect to the past offenses," (*People v. Davis*, 10 Cal.4th 463, 533 (1995)), but only pertains to

20   "the separate issue of the appropriate penalty for a *subsequent* offense." *People v. Melton*, 44 Cal.3d

21   713, 756, fn.17 (1988), cert. den. 488 U.S. 934.

22         Thus, Williams's appellate counsel was not ineffective for failing to raise this issue as it is

23   clearly without merit and would not have changed the outcome of the appeal.

24         In conclusion, Williams cannot show cause for the procedural default and prejudice as a result

25   of the alleged violation of federal law based on his ineffective assistance of counsel claims.  Moreover,

26   "the fact that [counsel] did not present an available claim or that he chose to pursue other claims does

27   not establish cause." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).  In the absence

28   of cause and prejudice, Williams will have to prove he has suffered a fundamental miscarriage of

1   justice.

2   **C.      Fundamental Miscarriage of Justice Exception**

3   "[E]ven if a state prisoner cannot meet the cause and prejudice standard, a federal court may

4   hear the merits of [a defaulted claim] if the failure to hear the claim[s] would constitute a 'miscarriage

5   of justice'." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  A miscarriage of justice is ordinarily

6   viewed as "a constitutional violation [that] has probably resulted in the conviction of one who is

7   actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Schlup v. Delo*, 513 U.S.

8   298, 324-25 (1995) (stating "[t]he quintessential miscarriage of justice is most compelling in the

9   context of actual innocence.").

10   As outlined above, Williams's ineffective assistance of counsel claims lack merit and thus

11   preclude a finding of constitutional error in the first instance or of innocence in the second.  With

12   regard to Williams's claims four, six, seven, and eight, each is related to the sentencing phase of his

13   trial.  There is a "less exacting standard of proof on a habeas petitioner [alleging actual innocence]

14   than on one alleging that his sentence is too severe" because there is greater injustice associated with

15   a claim of actual innocence.  *See Sawyer*, 505 U.S. at 348.

16   The court in *Sawyer* thus applied a "clear and convincing" standard to assessing whether a

17   habeas petitioner, challenging the severity of his sentence based on a constitutional error, has shown

18   a miscarriage of justice exception to the bar against federal court review of the merits of procedurally

19   defaulted claims.  *Id*. ("we must determine if Petitioner has shown by clear and convincing evidence

20   that but for constitutional error, no reasonable juror would find him eligible for the death penalty . .

21   .").  This Court will apply the *Sawyer* standard in determining whether the merits of Williams's

22   defaulted sentencing claims may be considered under the miscarriage of justice exception to

23   procedurally defaulted claims.

24   Williams's claim number four does not contain an allegation of constitutional error.  His claim

25   rests on challenging the state court's application of California statutory and case law in twice imposing

26   three five-year serious strike priors; once as an enhancement to his indeterminate term and again as

27   an enhancement to his determinate term.  Not only does the *Sawyer* analysis only apply to

28   constitutional errors, but as a general rule, federal courts do not have authority to review a state's

application of its own sentencing laws. *Jackson v. Ylst*, 921 F. 2d 882, 885 (1990).  Thus, this Court cannot entertain Williams's fourth claim.

In claim six, Williams argues he was denied due process when his 1996 attempted robbery conviction from Oregon was considered a serious felony prior for sentencing purposes.  The Court has already discussed and rejected this claim under assessment of Williams's ineffective assistance claim. The conduct underlying Williams's conviction amounted to a serious felony under California law regardless of whether the elements for attempted robbery under Oregon law fail to match those under California law.  It is not the laws that have to be the same, it is the conduct that has to fit within the elements of the California definition of attempted robbery.  Williams has not shown clear and convincing evidence that his due process right to have each element of a prior proved was violated.

Williams's seventh claim is that his 1978 assault conviction was not a serious felony and should not have brought him within the Three Strikes Law.  Again the Court rejected this argument under analysis of Williams's ineffective assistance of counsel claim, finding that the prosecution met its burden of pleading and proving that in 1978 Williams was convicted of assault with a deadly weapon which falls under the serious felony definition for purposes of the Three Strikes Law. Similarly, Williams's eighth claim is the double jeopardy challenge that we rejected under the above analysis of ineffective assistance of counsel.  Evidence of past criminal conduct did not put Williams in jeopardy for his past conviction but provided sentencing enhancements for his current and subsequent convictions.

In conclusion, Williams has not shown by clear and convincing evidence that he suffered a miscarriage of justice.  Therefore, because Williams has failed to demonstrate cause and prejudice or a fundamental miscarriage of justice, his claims four through eight remain procedurally barred and are **DENIED**.

## VII.    CLAIMS ON MERITS

The first three claims presented in Williams's Amended Petition were not procedurally defaulted in the state courts, and accordingly, these claims will be examined on the merits.

### A.    Claim One:  Cross-Admissibility of Evidence

In claim one of the Amended Petition, Williams asserts that he was denied his right to due

07cv0959

1    process when the trial court refused to instruct the jury that evidence of each robbery and the

2    attempted robbery from Oregon was not cross-admissible as proof of each other robbery.  (Am. Pet.

3    13-14.)  At several times before and during the trial, Williams's attorney requested that the court give

4    an instruction informing the jury that the evidence was not cross-admissible.  (3 RT 219, 8 RT 1108,

5    9 RT 1313.)

6         This Court must review the California Court of Appeal's decision because it was the last

7    reasoned opinion issued by the state courts on this issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-

8    06 (1991) (holding that where the last state court opinion is a summary denial, the Court must look

9    through that order and review the last reasoned state court opinion).

10        In deciding evidence of the separate crimes was cross-admissible the appellate court stated:

11            Here, some elements were common to all eight of the charged
         offenses.  In every case, the robber was armed with a handgun and,
12        where any further description was given, it was described as a silver or
         chrome handgun.  In every case, the robber concealed himself on the
13        business premises to await the store's closing, and only then revealed
         himself to take the employees captive and demand money.  In every
14        case the robber gained control over the employees at the premises and
         then ordered them to go to the safe, apparently eschewing any interest
15        in locating or taking any cash potentially in the cash registers.  In seven
         of the eight charged offenses, the robber did not himself gather the
16        money from the safe, but instead ordered one to three employees to bag
         the money for him.  In every case, while the selected employee[s]
17        bagged the cash, the robber maintained control over the remaining
         "non-bagging" employees by ordering them to lie on the floor or, in
18        one case. to face the wall.  In all but one robbery he specifically told
         the employees not to give him coins, but limited himself to taking only
19        the paper money.  Finally, although the robber's method of waiting for
         the store to close ordinarily insured he would need to maintain control
20        over only two or three employees during the robbery, on two occasions
         when an unexpectedly large number of employees were encountered
21        (the R.E.I. and Home Base robberies), he used the same ruse to
         maintain control over the larger group by calling out to an accomplice
22        (apparently fictitious), implying there was someone else keeping watch
         over the elarger group.
23            Additionally, the constellation of similarities became more
         pronounced as the robber gained experience.  Although the robber used
24        a ski mask and gloves in one of his first three robberies, he did not use
         disguises in the other two.  However, by April of 1995, he had
25        resurrected the use of a mask to disguise his face (using a stocking
         mask), and had reincorporated the use of gloves to avoid leaving
26        fingerprints.
             We conclude that because the offenses had both numerous
27        shared marks and had many marks bearing some degree of
         distinctiveness, it was within the discretion of the trial court to
28        determine the evidence was relevant on the issue of identity.

07cv0959

1   (Lodgment No. 1 at 14-15.)

2       A federal court's habeas powers do not allow for reversal of a conviction based on a belief that

3   the trial court erroneously applied the California Evidence Code in allowing prior crimes evidence.

4   *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The Court's only task is to assess whether the state

5   court's failure to instruct the jury against cross-admissibility of the evidence "so infected the whole

6   trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

7   Therefore, "[a] habeas Petitioner bears a heavy burden in showing a due process violation based on

8   an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).  As long as the jury

9   could draw a permissible inference from evidence of the prior/other crimes, and was instructed not to

10   draw improper inferences from that evidence, we must presume the jury followed instructions and

11   drew only a permissible inference. *Id.*  Under those circumstances, admission of other/prior crimes

12   does not violate due process. *Id.*

13       California Evidence Code section 1101 precludes the admission of evidence of a defendant's

14   character or particular character traits to prove that on a specific occasion the defendant acted in

15   accordance with that character.  Cal. Evid. Code § 1101(a).  Nevertheless, the evidence code does not

16   prohibit "the admission of evidence that a person committed a crime, civil wrong, or other act when

17   relevant to prove some fact (such as motive, opportunity, intent , preparation, plan, knowledge,

18   identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

19   Cal. Evid. Code § 1101(b).

20       Here, the appellate court determined that evidence of each robbery in the present case was

21   relevant to show that the perpetrator of each robbery carried out his planned robberies in the same

22   manner, thus lending support to the prosecution's theory that the same person committed each charged

23   robbery.  Such inference was permissible.  The appellate court also noted the trial court gave the

24   following limiting instruction to the jury:

25

26               **CALJIC 2.50**
                **EVIDENCE OF OTHER CRIMES**
27          Evidence has been introduced for the purpose of showing that
     the defendant committed a crime other than that for which he is on trial.

28          This evidence, if believed, may not be considered by you to
     prove that defendant is a person of bad character or that he has a

disposition to commit crimes.  It may be considered by you only for the purpose of determining if it tends to show:

A characteristic method, plan, or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case which would further tend to show the existence of the intent which is a necessary element of the crime charged.

For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case.

You are not permitted to consider such evidence for any other purpose.

(Lodgment 15, 4 CT 704.)

The jury could fairly make a permissible inference, that the same person committed all the robberies, from the cross-admissible evidence.  Therefore the appellate court's rejection of Williams's evidentiary argument did not violate his due process rights, nor was the court's decision contrary to or an unreasonable application of clearly-established federal law.  Williams's claim in this regard is **DENIED**.

**B.       Claim Two:  Notice of Facts Used to Prove Prior Conviction**

In claim two, Williams asserts that he was denied his right to due process when the government did not provide him with notice of the factual basis upon which it would rely to prove that a prior assault conviction from 1978 was a prior strike.  (Am. Pet. 15-16.)  The fourth amended information alleged that Williams had three prior felony convictions, each of which qualified as a serious felony and a strike prior.  (Lodgment No. 15, 2 CT  408-09.)  One of the strike prior allegations was a 1978 conviction for assault with a deadly weapon under California Penal Code section 245(a).  (*Id.* at 409.)  Williams alleges that the government was required to provide him with notice in the information of the facts underlying the assault conviction on which prosecutors would rely to prove that it qualified as a strike prior.  (Am. Pet. 15.)

According to Williams, it was essential in this case that he be informed of the factual basis of the conviction because the plea agreement leading to the 1978 conviction is ambiguous as to which count Williams pled guilty.  (*Id.* at 15-16.)  The 1978 change of plea documents indicated that Williams pled guilty to count number three of the information, which charged Williams with assault with a deadly weapon (namely a firearm) against Sherry Garner.  Nevertheless, the change of plea form also reflected that Williams was guilty for "striking his girlfriend 3 times with a baseball bat on

1  the lower part of her body after finding her in bed with another man," which is the factual predicate

2  of count one of the information and concerning a separate victim, Milfred Farmer.  (See Am. Pet. 18,

3  20-22.)  Accordingly, Williams asserts, he did not know which factual circumstance – the assault on

4  Sherry Garner or the assault on Milfred Farmer – formed the basis of the alleged strike prior in the

5  present case.

6        The court of appeal stated the standard as follows:  "The requirements of due process are

7  satisfied if the defendant is sufficiently advised of the charges against him so he has a reasonable

8  opportunity to prepare his defense and not be surprised by the evidence offered at trial to prove the

9  pleaded offense or enhancement."  *Id.* at 20 (citing *People v. Thomas*, 43 Cal. 3d 818, 823 (1987)).

10 Applying this standard, the court found Williams was not denied his due process right to adequate

11 notice because the information clearly identified the conviction that was alleged as a prior, and there

12 could be no confusion as to which conviction the allegation referred.  The court explained it as

13 follows:

> [T]he information specifically identified the prior conviction on which the prosecution intended to rely for its prior serious felony allegation: Williams's 1978 conviction.  The only 1978 conviction suffered by Williams in that proceeding was the conviction premised on his guilty plea to count three of the 1978 information, which count alleged assault with a deadly weapon and by means of force likely to produce great bodily injury against Ms. Garner in violation of section 245, subdivision (a).

18 (Id. at 20-21.)

19        It is well-established that a criminal defendant has the right to notice of the charges against

20 him.  *Gray v. Netherland*, 518 U.S. 152, 167 (1996) (citing *In re Ruffalo*, 390 U.S. 544 (1968); *Cole*

21 *v. Arkansas*, 333 U.S. 196 (1948)); *Gautt v. Lewis*, 489 F.3d 993, 1002 (9th Cir. 2007) (citations

22 omitted).  "To determine whether the defendant received adequate notice, 'the court looks first to the

23 information,' the 'principal purpose of [which] is to provide the defendant with a description of the

24 charges against him in sufficient detail to enable him to prepare his defense.'"  *United States v. Deng*,

25 537 F. Supp. 2d 1116, 1123 (D. Haw. 2008) (alteration in original) (quoting *James v. Borg*, 24 F.3d

26 20, 24 (9th Cir. 1994)).  An information must "state the elements of an offense charged with sufficient

27 clarity to apprise a defendant of what he must be prepared to defend against."  *Givens v. Housewright*,

28 786 F.2d 1378, 1380 (9th Cir. 1986) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)).

The information in Williams's case alleged that Williams was convicted of violating California Penal Code section 245(a) on June 21, 1978, in San Diego Superior Court case number CR43377. (Lodgment No. 15, 2 CT 409.)  Penal Code section 245(a) defines the crime of assault with a deadly weapon.  The information did not provide any further detail or factual information about the alleged 1978 conviction.  Nevertheless, as was pointed out by the California Court of Appeal, Williams was only convicted of a single offense in 1978.  That conviction arose from a plea bargain in which Williams pled guilty to count three of an information, which alleged as follows:  "On or about April 10, 1978, Benny Wayne Williams did assault another (Sherry Garner) with a deadly weapon and instrument, and by means of force likely to produce great bodily injury, in violation of Penal Code section 245(a)."  (Lodgment No. 15, Clerk's Tr. vol. 2, at 274, 320-21.)

In order to prove that the alleged 1978 conviction was a serious felony prior and a strike prior under California law, the prosecution had to establish that Williams was convicted of a violation of 245(a) as alleged and that the crime involved the use of a deadly weapon.  *People v. Haykel*, 96 Cal. App. 4th 146, 149-50 (2002); *People v. Winters*, 93 Cal. App. 4th 273, 280 (2001) (citations omitted). By including the applicable penal code section in Williams's indictment, the prosecutor provided Williams with notice of the elements the prosecution would be attempting to prove to support the prior strike allegation.  See *Jones v. Jago*, 701 F.2d 45, 48 (6th Cir. 1983) (denying Petitioner's claim of improper notice where indictment charged aggravated murder under the state's penal code, and the penal code section provides the elements of the offense to be proved at trial); *Carter v. United States,* 173 F.2d 684, 685 (10th Cir. 1949) ("Where a statute creating an offense sets forth fully, directly, and expressly all the essential elements necessary to constitute the crime intended to be punished, it is sufficient if the indictment charges the offense in the words of the statute.").  The charging document need not contain all the facts or the evidence that will be presented by the prosecution, so long as the defendant is put on notice of the charges he must answer.  *See Gray*, 518 U.S. at 167-68 (finding no due process violation where defendant only had one day's notice of prosecution's evidence); *Brodit v. Cambra*, 350 F.3d 985, 988 (9th Cir. 2003) (finding notice was adequate where charging document alleged defendant committed three or more acts of sexual abuse on unspecified dates within a several-year time period).

1    For these reasons, the Court finds that the California Court of Appeal's decision did not

2 involve an unreasonable application of any clearly established federal law, and it recommends that

3 Williams's claim be **DENIED**.

4    **C.    Claim Three:  Improper Use of Prior Convictions as Strikes**

5    In claim three, Williams asserts that two prior convictions were improperly used as strikes to

6 increase his sentence in the present case because, pursuant to the plea agreements he entered in those

7 cases, the firearm allegations were dismissed.  (Am. Pet. 23-24.)  He contends that his convictions for

8 burglary in 1974 and assault in 1978 could only be used as strikes if he had used a firearm in the

9 commission of each crime.  (*Id*. at 23.)  Therefore, Williams argues there was a violation of due

10 process and the Contract Clause because he did not get the benefit of the plea bargains he entered.

11 (*Id*.)

12    This claim was presented to the state appellate court in Williams's direct appeal.  (*See*

13 Lodgment No. 1 at 22-23.)  The court rejected Williams's claim, finding that "[b]ecause Williams's

14 guilty plea did not include any express or implied agreement he would be free of future statutory

15 sentencing schemes if he chose to re-offend, application of that scheme to Williams did not offend the

16 contract clause of the federal or state Constitution."  (*Id*. at 24 (internal citation omitted).)  "[A] trial

17 court properly applies the law in existence at the time of the new offense to sentence the defendant,

18 including the determination of the effect of the prior offense on his or her sentence for the new crime

19 . . .."  (*Id*.)

20    Plea agreements are a form of contract between the defendant and the state.  *Buckley v.*

21 *Terhune*, 441 F.3d 688, 695 (9th Cir. 2006) (en banc).  Hence, the Supreme Court has held that a

22 criminal defendant has a due process right to enforce the terms of he plea agreement that he enters.

23 *Santobello v. New York*, 404 U.S. 257, 261-62 (1971).  Additionally, the Contract Clause prevents the

24 states from passing any laws that will impair the obligations of these contracts.  U.S. Const., art. I, §

25 10, cl. 1.  Williams asserts that both due process and the Contract Clause were violated when the trial

26 court used his bargained-for prior convictions to sentence him under California's Three-strikes law,

27 which was not in place at the time he entered the pleas and therefore was not incorporated into those

28 contracts.  (Am. Pet. 23-24.)

The Contracts Clause is violated where a state enacts a law which alters the legal obligations of the parties to a contract that was previously entered into by them. *See Robertson v. Kulongoski*, 466 F.3d 1114, 1117 (9th Cir. 2006).  Contrary to Williams's argument, the application of California's habitual offender statute to the plea agreements he entered in 1974 and 1978 did not alter the legal obligations of the parties to those contracts.  The 1974 plea agreement provides that in exchange for Williams's guilty plea to one count of first-degree burglary, the prosecution would dismiss the other count and all firearm allegations, and the prosecution agreed that Williams's sentence would run concurrent with his sentence in a separate criminal case with credit for time already served. (Lodgment No. 15, 2 CT 258-59.)  Likewise, the 1978 agreement provides that in exchange for Williams's guilty plea to one count of assault with a deadly weapon against Sherry Garner, the prosecution would dismiss the remaining counts and all firearm allegations, and the judge agreed that if Williams were to be sentenced to time in custody, that time could be served in a local facility and it would be no longer than one year.  (Id. at 320-21, June 21, 1978.)  The government upheld its obligations under both contracts.  There are no promises in either plea agreement regarding the use of the convictions for purposes of enhanced sentencing in the future.

Williams has simply failed to show that either of his prior plea agreements were breached or altered in any way, or that the obligations of the parties to those agreements were impaired. Accordingly, his Contract Clause argument fails. *See also Aiyedogbon v. Evans*, No. C 06-3822 WHA (PR), 2008 WL 1809089, at *12 (N.D. Cal. Apr. 22, 2008) (rejecting argument that the passage of three-strikes law violated contract clause because Williams's pre-three strikes plea bargain included an implied term allowing the state to change criminal sentencing laws).  His due process argument fails for the same reasons.  Accordingly, it is recommended that Williams's claim be **DENIED**.

## V.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Barry T. Moskowitz under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **February 27, 2009,** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 13, 2009**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  February 5, 2009

Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

07cv0959